J-S08043-20
J-S08044-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| IN THE INTEREST OF: M.E.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: M.E.M., BIOLOGICAL FATHER | : | No. 1615 WDA 2019 |

Appeal from the Order Entered October 10, 2019
in the Court of Common Pleas of Allegheny County
Orphans' Court at No(s): CP-02-AP-0000023-2019

| IN THE INTEREST OF: M.E.M, A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: M.P., NATURAL MOTHER | : | No. 1624 WDA 2019 |

Appeal from the Order Entered October 10, 2019
in the Court of Common Pleas of Allegheny County
Orphans' Court at No(s): CP-02AP-023-2019

BEFORE: OLSON, J., McCAFFERY, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:                FILED MARCH 30, 2020

M.E.M. ("Father") and M.P. ("Mother") (collectively, the "Parents") appeal from the Orders granting the Petitions filed by the Allegheny County Office of Children Youth and Families ("OCYF"), which sought to involuntarily terminate their parental rights to their biological child, M.E.M. ("Child") (a male born in January 2018), pursuant to the Adoption Act, 23 Pa.C.S.A. § 2511(a)(2), (5), (8), and (b). Father challenges the termination of his

parental rights under each of these sections. Mother challenges only whether the trial court properly terminated her parental rights under section 2511(b). We affirm both Orders.

In its Opinion, the trial court set forth the factual background and procedural history of this appeal, which we adopt for the purpose of this appeal. See Trial Court Opinion, 12/10/19, at 1-9.

At the hearing, Tara Yontz, Esquire ("Attorney Yontz"), from KidsVoice, was present as the guardian ad litem ("GAL") for Child, since she already served as GAL in the dependency matters for Child and his siblings, who were not present. N.T., 2/19/19, at 3. Attorney Yontz requested the appointment of conflict counsel for Child in the termination proceedings. See In re Adoption of L.B.M., 161 A.3d 172, 174-75 (Pa. 2017) (plurality) (wherein our Supreme Court held that 23 Pa.C.S.A. § 2313(a) requires that counsel be appointed to represent the legal interests of any child involved in a contested involuntary termination proceeding. The Supreme Court further defined a child's legal interest as synonymous with his or her preferred outcome); see also In re T.S., 192 A.3d 1080, 1089-90, 1092-93 (Pa. 2018) (wherein the Supreme Court held that the trial court did not err in allowing the childrens' GAL to act as their sole representative during the termination proceeding because, at two and three years old, they were incapable of expressing their preferred outcome). John Cavicchio, Esquire ("Attorney Cavicchio"), was appointed as conflict counsel.

The trial court held evidentiary hearings on OCYF's Petition on February 19, 2019, and September 27, 2019. At the February 19, 2019, hearing, OCYF presented the testimony of Jennifer Watson ("Watson"), the OCYF caseworker assigned to the family, see N.T., 2/19/19, at 3; Linda Patterson-Bell, a visit coach from Holy Family Institute ("HFI"), see id. at 28; Emily Mackowiak ("Mackowiak"), a visit coach from HFI, see id. at 52; and Laura Burbaugh ("Burbaugh"), the treatment coordinator from Pressley Ridge, see id. at 74. Attorney Yontz presented the testimony of T.K., Child's foster mother ("Foster Mother"), who is also the foster mother for Child's older brother, Ai., see id. at 78; and H.E.-M., the foster mother for Child's older brother, Ad., see id. at 83. Mother testified on her own behalf. See id. at 61.

At the hearing on September 27, 2019, OCYF presented the testimony of Watson, see N.T., 9/27/19, at 5; Heather Anderson, who is an in-home services worker with HFI, see id. at 87; Mackowiak, see id. at 94; Burbaugh; and Megan Brooks, who is the foster care planner at Pressley Ridge assigned to Child (id. at 158). Attorney Cavicchio gave a statement

J-S08043-20
J-S08044-20

regarding Child's legal interests.[1]

In the Orders entered on October 10, 2019, the trial court terminated Father's and Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), (5), (8), and (b). Father and Mother, respectively, each timely filed a Notice of Appeal along with a Concise Statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).[2]

On appeal, Father raises the following issues:

I. Whether the [t]rial [c]ourt committed fatal error and/or abused its discretion in finding [that OCYF] met [its] burden of proof and

_____

[1] The record reflects that, at the close of the evidence, Attorney Cavicchio stated the position of Child, who was twenty months old, on the record. N.T., 9/27/19, at 170-71. Attorney Cavicchio stated that, when he had broached the topic of Child's preference as to the termination of his Parents' parental rights, Child was not able to answer in any substantive way, and could not express any preference. Id. Citing In re: T.S., 192 A.3d at 1082, Attorney Cavicchio stated that, where a child cannot express his preference, the role of legal counsel is effectively synonymous with that of a GAL, such that Attorney Cavicchio was to offer what he believed was in Child's best interests. N.T., 9/27/19, at 170-71. Attorney Cavicchio testified that it would be in Child's best interests for the trial court to terminate Parents' parental rights. Id. at 171. We do not comment on the quality of Attorney Cavicchio's representation of Child. See In re: Adoption of K.M.G., 219 A.3d 662, 669 (Pa. Super. 2019) (en banc), (holding that this Court has authority only to raise, sua sponte, the issue of whether the trial court appointed any counsel for the child, and not the authority to delve into the quality of the representation), appeal granted in part and denied in part, 221 A.3d 649 (Pa. 2019).

[2] On November 12, this Court, acting sua sponte, listed the appeals consecutively. We are addressing both appeals in the same Memorandum, as the trial court addressed both Father's and Mother's matters in the same Opinion. On December 11, 2019, this Court granted the Motion to substitute counsel, substituting Lynne Sherry, Esquire ("Attorney Sherry"), as legal counsel for Child, replacing Attorney Cavicchio. Attorney Sherry filed a brief on behalf of Child in this matter.

- 4 -

proved[,] by clear and convincing evidence[,] that the parental rights of [Father] should be terminated pursuant to 23 Pa.C.S.A. § 2511(a)(2), (a)(5), and (a)(8)?

II. Whether the [t]rial [c]ourt erred and/or abused its discretion by finding that the [OCYF] met [its] burden of proof and proved[,] by clear and convincing evidence[,] that terminating the parental rights of [Father] best meets the needs and welfare of [Child] pursuant to 23 Pa.C.S.A. § 2511(b)?

Father's Brief at 5.

On appeal, Mother raises one issue:

1. Did the trial court abuse its discretion and/or err[,] as a matter of law[,] in concluding that termination of [] Mother's parental rights would serve the needs and welfare of [] Child pursuant to 23 Pa.C.S.A. § 2511(b)?

Mother's Brief at 6.[3]

In reviewing an appeal from the termination of parental rights, we adhere to the following standard:

[A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. In re: R.J.T., … 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law

_____

[3] Mother does not raise section 2511(a) in the Statement of Questions Involved in her brief. See Krebs v. United Refining Co. of Pa., 893 A.2d 776, 797 (Pa. Super. 2006) (stating that any issue not set forth in or suggested by an appellate brief's statement of questions involved is deemed waived). In fact, Mother concedes that OCYF established, by clear and convincing evidence, that the grounds for termination pursuant to 23 Pa.C.S.A. § 2511(a)(2) were satisfied. We, nevertheless, would find such a challenge lacks merit for the reasons set forth infra, and provided in the trial court's Rule 1925(a) Opinion.

or abused its discretion. Id.; R.I.S., 36 A.3d 567, 572 (Pa. 2011) [(plurality)]. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. Id.; see also Samuel Bassett v. Kia Motors America, Inc., … 34 A.3d 1, 51 (Pa. 2011); Christianson v. Ely, 838 A.2d 630, 634 (Pa. 2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. Id.

As we discussed in R.J.T., there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. R.J.T., 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. In re Adoption of Atencio, 650 A.2d 1064, 1066 (Pa. 1994).

In re Adoption of S.P., 47 A.3d 817, 826-27 (Pa. 2012).

The burden is upon the petitioner to prove, by clear and convincing evidence, that the asserted grounds for seeking the termination of parental rights are valid. In re R.N.J., 985 A.2d 273, 276 (Pa. Super. 2009). The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." Id. (quoting In re J.L.C., 837 A.2d 1247, 1251 (Pa. Super. 2003)).

This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of section 2511(a), along with consideration of section 2511(b). See In re B.L.W., 843 A.2d 380, 384 (Pa. Super. 2004) (en banc). We will address section 2511(a)(2) and subsection (b), which provide as follows:

> § 2511. Grounds for involuntary termination
>
> (a) General rule.--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> * * *
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> * * *
>
> (b) Other considerations.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (b).

To satisfy the requirements of subsection (a)(2), the moving party must produce clear and convincing evidence regarding the following elements: (1)

repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied. See In re Adoption of M.E.P., 825 A.2d 1266, 1272 (Pa. Super. 2003). The grounds for termination of parental rights under subsection (a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties. In re A.L.D. 797 A.2d 326, 337 (Pa. Super. 2002).

Father argues that the trial court erred and/or abused its discretion in terminating his parental rights under subsection(a)(2). Father's Brief at 10. Father asserts that he did make progress in achieving his plan goals, and remedying the conditions that led to the dependency adjudication. Id. at 11. Father states that he completed a domestic violence program through Renewal Center and a Batterer's Intervention Program through Woman's Center and Shelter. Id. (citing N.T., 9/27/19, at 26). Father alleges that no domestic violence incidents occurred since 2014, or during the life of Child. Id. Father states that he attended mental health therapy from October 2, 2018, through July 31, 2019. Id. Father asserts that he also visited Child to strengthen his bond with Child. Id.

In its Opinion, the trial court addressed the termination of Father's[4] parental rights under 23 Pa.C.S.A. § 2511(a)(2). See Trial Court Opinion, 12/10/19, at 11-12. We agree with and adopt the trial court's Opinion with regard to the termination of Father's parental rights under 23 Pa.C.S.A. § 2511(a)(2). See id.

There is competent evidence in the record that supports the trial court's findings and credibility determinations. The termination of Father's parental rights to Child is warranted pursuant to section 2511(a)(2), as Father clearly lacks parental capacity, and the evidence showed that he will be unable to remedy that situation within a reasonable period of time, if ever. There was sufficient, competent evidence in the record for the trial court to find the grounds for termination of parental rights under section 2511(a)(2), due to parental incapacity that cannot be remedied. We thus find no abuse of the trial court's discretion in finding that Father's parental rights should be terminated under section 2511(a)(2). See In re Adoption of S.P., 47 A.3d at 826-27.

Next, we address the Parents' challenge to termination pursuant to section 2511(b). We have explained that the focus in terminating parental rights under section 2511(a) is on the parent, but, under section 2511(b), the focus is on the child. See In re Adoption of C.L.G., 956 A.2d 999, 1008

---

[4] The trial court also addressed the termination of Mother's parental rights under subsection (a)(2).

(Pa. Super. 2008) (en banc). In reviewing the evidence in support of termination under section 2511(b), our Supreme Court has stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.A. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." In re K.M., 53 A.3d 781, 791 (Pa. Super. 2012). In In re E.M., [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. In re K.M., 53 A.3d at 791.

In re: T.S.M., 71 A.3d 251, 267 (Pa. 2013).

When evaluating a parental bond, the trial court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, section 2511(b) does not require a formal bonding evaluation. In re Z.P., 994 A.2d 1108, 1121 (Pa. Super. 2010) (internal citations omitted). Although it is often wise to have a bonding evaluation and make it part of the certified record, "[t]here are some instances … where direct observation of the interaction between the parent and the child is not necessary and may even be detrimental to the child." In re K.Z.S., 946 A.2d 753, 762 (Pa. Super. 2008).

A parent's neglect is likewise a relevant part of this analysis:

> [C]oncluding a child has a beneficial bond with a parent simply because the child harbors affection for the parent is not only dangerous, it is logically unsound. If a child's feelings were the dispositive factor in the bonding analysis, the analysis would be

> reduced to an exercise in semantics as it is the rare child who, after being subject to neglect and abuse, is able to sift through the emotional wreckage and completely disavow a parent …. Nor are we of the opinion that the biological connection between [the parent] and the children is sufficient in [and] of itself, or when considered in connection with a child's feeling toward a parent, to establish a de facto beneficial bond exists. The psychological aspect of parenthood is more important in terms of the development of the child and [his or her] mental and emotional health than the coincidence of biological or natural parenthood.

In re K.K.R.-S., 958 A.2d 529, 535 (Pa. Super. 2008) (internal citations and quotation marks omitted). Thus, the court may emphasize the safety needs of the child. See In re K.Z.S., 946 A.2d at 763-64 (affirming the involuntary termination of the mother's parental rights, despite the existence of some bond, where placement with the mother would be contrary to the child's best interests, and any bond with the mother would be fairly attenuated when the child was separated from her, almost constantly, for four years).

Father argues that the trial court erred in finding that the termination of his parental rights serves Child's best interests. Father's Brief at 14. Father asserts that his failures are not significant for purposes of assessing Child's bond with him. Id. at 16. Father contends that the trial court erred and/or abused its discretion in ruling that the severance of the bonded relationship between Father and Child best meets the needs and welfare of Child. Id.

Likewise, Mother argues that the trial court abused its discretion and erred as a matter of law by concluding that the termination of her parental rights would best serve the needs and welfare of Child pursuant to section 2511(b). Mother's Brief at 11. Mother asserts that the issue of what serves

the needs and welfare of Child is not the same as what is in his best interest, and the issue is to be analyzed to a much higher standard. Id. Mother contends that the trial court failed to consider the nature of the bond between Mother and Child, as well as what effect the termination of her parental rights would have on Child. Id.

In its Opinion, the trial court addressed the termination of Father and Mother's parental rights, under 23 Pa.C.S.A. § 2511(b), and determined that termination would serve Child's best interests. See Trial Court Opinion, 12/10/19, at 12-13. The record supports the trial court's findings, and its conclusion is sound. See id. We reject the Parents' arguments and agree with the trial court's determination that there is no parent-child bond that, if severed, would permanently affect Child. There was competent evidence in the record from which the trial court could conclude that the termination of the Parents' parental rights to Child serves Child's needs and welfare and is in his best interests. The record supports the trial court's factual findings, and the court's conclusions are not the result of an error of law or an abuse of discretion with regard to section 2511(b). In re Adoption of S.P., 47 A.3d at 826-27. We therefore affirm on the basis of the trial court's Opinion with regard to termination of the parental rights of Father and Mother pursuant to section 2511(b).

This Court has explained that a parent's own feelings of love and affection for a child, alone, do not prevent termination of parental rights. In

re Z.P., 994 A.2d at 1121. Further, this Court has stated: "[A] parent's basic constitutional right to the custody and rearing of … [his or] her child is converted, upon the failure to fulfill … [his or] her parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." In re B.,N.M., 856 A.2d 847, 856 (Pa. Super. 2004) (internal citations omitted). "[W]e will not toll the well-being and permanency of [a child] indefinitely." In re Adoption of C.L.G., 956 A.2d at 1007 (citing In re Z.S.W., 946 A.2d 726, 732 (Pa. Super. 2008) (noting that a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting.")).

We, therefore, affirm the Orders terminating Father's and Mother's parental rights with regard to Child under section 2511(a)(2) and (b).

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/30/2020

- 13 -

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
ORPHANS' COURT DIVISION

IN THE INTEREST OF:

M.W.E-M. minor child

APPEAL OF: M.E-M. natural father
M.P. natural mother

**CHILDREN'S FAST TRACK APPEAL**

Docket No.: AP-23-2019
1615 WDA 2019 & 1624 WDA 2019

OPINION

PROCEDURAL HISTORY:

On September 27th, 2019 this Court granted the Office of Children Youth and Families' (hereinafter OCYF) Petition to Terminate the Parental Rights of M.P. (hereinafter Mother) and M.E-M. (hereinafter Father) pursuant to 23 Pa.C.S.A. §2511(a)(2), (5), (8) and (b). Father filed a timely appeal as to the Court's finding that his parental rights be terminated pursuant to 23 Pa.C.S.A. §2511(a)(2), (5), (8) and (b). Mother filed a timely appeal as to the Court's finding that termination would best serve the needs and welfare of the child pursuant to 23 Pa.C.S.A. §2511(b) only. For the reasons set forth below, the order of this Court should be affirmed.

HISTORY:

M.W.E-M. (hereinafter "the child") was born on January██, 2018. The family had three open dependency cases before the Court for the child's three older siblings. All three of those children were in foster care at the time of the child's birth and the parents had supervised visitation with those children. The family first came to the attention of OCYF in 2014 after OCYF received reports that the parents were not meeting the nutritional and

1

medical needs of one of their children. As OCYF became more involved with the family, they developed additional concerns about substance abuse and domestic violence. When the family became court active in 2014, the parents were court ordered to engage in drug and alcohol treatment, attend random screens, engage in mental health treatment, attend parenting classes, and both were to participate in domestic violence therapy[1]. The parents' court ordered goals have remained the same throughout the history of the case.

After the child's birth on January 7th, 2018, he was required to remain at the hospital for two weeks to wean off Subutex, which was prescribed to Mother during her pregnancy. Prior to his birth and immediately after, OCYF continued to have concerns that the parents had not remedied the concerns which led to the removal of their older children. Additionally, the parents had failed to make enough progress to obtain unsupervised visitation with the older siblings. As a result, OCYF obtained an Emergency Custody Authorization for the child upon his discharge from the hospital. He was placed in the foster home of T.K. and J.G. on January 20th, 2018 as his older brother was also placed in this home.

The parties appeared for a Shelter Hearing on January 22nd, 2018. The Court ordered the child remain in foster care and allowed parents supervised visitation three times a week. OCYF filed a Dependency Petition and the Adjudicatory Hearing was held on February 7th, 2018. The Court found the child to be dependent pursuant to 42 Pa.C.S.A. §6302 and (10)[2]. The Court ordered the child to remain in foster care. Parents had not been consistently

---

[1] Father had been identified as a perpetrator of domestic violence against Mother. He was convicted of Simple Assault in regard to incidents in 2012, 2013 and 2014 in which she was the victim.

[2] Mother's and Father's Parental rights were terminated with respect to one of the older siblings, N.E.-M., on January 10th, 2018.

2

visiting the child as such, the Court ordered the parents to confirm visits 24 hours in advance. Visitation was also changed to allow for the Coached Visitation Program to work with the family. The parents were ordered to undergo forensic psychological evaluations at Allegheny Forensic Associates, to comply with dual diagnosis treatment, attend random drug screens, to sign releases for any treatment they were receiving, and Mother was ordered to comply with domestic violence counseling. The Court also found that aggravated circumstances existed as to both Mother and Father based on the prior termination of their parental rights as it related to another child, N.E.-M.. The Court did not relieve OCYF from making reasonable efforts to reunify the child with Mother and Father. OCYF was ordered to continue providing services to the family. Foster parents were given secondary educational and medical decision-making rights on this date as well.

Dr. Patricia Pepe was the court-appointed licensed psychologist assigned to work with the family in 2014. In February of 2018, Dr. Pepe conducted individual forensic evaluations of both Mother and Father. During Mother's evaluation, Dr. Pepe noted that the issues had remained the same throughout the history of the case. Specifically, that Mother had continued to prioritize her relationship with Father over that of her children and had failed to follow through with recommendations and goals set for her over the last four years. During Father's evaluation, Dr. Pepe noted that Father's traumatic childhood continued to affect his behavioral and psychological functioning. In her Discussion and Recommendations, Dr. Pepe opined that the parents "each may at times give halfhearted attempts to appear as if each is compliant, but any individual could in fact be fully compliant with all services yet not internalize, process or make necessary and fundamental changes". She noted that the

3

parents have been compliant at various periods throughout her tenure with the family. She noted that Father has made progress as to the domestic violence concerns that came to the attention of OCYF in 2014. However, she opined that he continues to "be angry, continues to project a great deal of responsibility and minimized his own role with not actualizing himself into a fully functional parent". Specifically, she opined that as his anger issues have lessened to some degree, character or personality issues have become more evident. Dr. Pepe also reported that Mother has made some progress but that "she too can easily externalize blame, projecting responsibility onto the system, and that she, not her children, have been wronged in some way". Dr. Pepe recommended that the parents comply with their court-ordered goals, specifically mental health treatment, drug and alcohol treatment, and domestic violence therapy.

Heather Anderson, a visit coach from Holy Family Institute, provided the parents with parenting instruction up until March 15th, 2018. However, she only participated in visits with M.W.E-M.'s older siblings. A new visit coach, Emily Mackowiak, was assigned to the family after Ms. Anderson's departure. Ms. Mackowiak provided services specially tailored to the family to assist them in setting and accomplishing goals with their children. Specifically, she worked with the parents on maintaining safety during visits and ensuring that they can meet the basic needs of the children. The additional goals developed for the family were for the parents to provide educational activities for the child, engage in age-appropriate interactions with him, provide healthy nutrition for him, and to focus their attention solely on him and his needs during visits.

The parties appeared on May 30th, 2018 for a Permanency Hearing. Mother and Father were both found to be in moderate compliance with the permanency plan. The parents were found to have made moderate progress toward alleviating the circumstances which necessitated the placement of the child. The Court found that the parents had increased their compliance during this reporting period but still needed to participate in the child's medical appointments. Visits remained status quo, but the Court allowed for one of the weekly visits to occur in the parents' home with the Coached Visitation Program. The parents were ordered to continue dual diagnosis treatment, attend random screens, attend forensic evaluations and follow any recommendations, and to attend the child's medical appointments. Mother was ordered to continue domestic violence treatment.

Dr. Pepe conducted individual psychological evaluations of both parents in August of 2018. Dr. Pepe noted that Mother was able to recognize that she chose to remain with Father as opposed to "steadfastly working on reunification with her children". While Dr. Pepe opined that Mother was able to take some responsibility, she also noted that Mother continues to blame "the system" for her failure to reunify with her children. Dr. Pepe also made similar observations regarding Father. She opined that he had made progress over the past four years but still struggled to accept his responsibility in the removal of his children. Ultimately, Dr. Pepe opined that if the parents had been consistently engaged with "recommended treatment modalities from the beginning, they would have a greater capacity to understand how their individual issues have impacted their capacity to parent." Additionally, she noted that any progress that they have made has not allowed them to provide consistent and positive parenting. She also noted that "finally being compliant with

5

multiple goals at the eleventh hour simply does not provide either with the level of change necessary to provide independent parenting".

The parties appeared for a Permanency Hearing on October 17th, 2018. The Court ordered the child to remain in foster care. The parents were found to be in moderate compliance with the permanency plan and to have made moderate progress. The Court found that the parents had been more compliant with their attendance at urine screens as well as dual diagnosis treatment. Based upon an improvement in visitation attendance, the Court permitted the visits to move into the family home with a proper parenting program or Visit Coaching Program to supervise[3]. The parents were ordered to continue drug and alcohol treatment, mental health treatment, domestic violence therapy, and random screens. The parents were also ordered to participate in the child's medical appointments as they had not attended any medical appointment during that reporting period.

The parents had been compliant with some of the court ordered goals during the remainder of 2018 and the beginning of 2019. However, they continued to exhibit parenting deficits despite working with numerous programs. Holy Family continued to work with the family during this period and continued to have concerns. The visit coach, Emily Mackowiak, had continued concerns about the parent's ability to safely and effectively parent the child. While the parents attended a fair amount of the visits[4], they struggled to accomplish goals originally set for them in March of 2018. Throughout the eleven months that the program

---

[3] Parents expressed a desire to work with a different parenting program or a different Visit Coaching Program.
[4] Mother attended 80 out of 111 visits and Father attended 68 out of 111 visits.

6

worked with the family, the parents made little progress. Neither parent provided educational activities for the child other than reading him a book on occasion. Ms. Mackowiak prompted the parents to provide books or puzzles at visits, but neither was able to consistently provide the child with activities to encourage development or education. The parents typically put on cell phone videos for the child that they deemed to be educational in nature. Ms. Mackowiak also reported that the parents struggled to understand the child's developmental skills and ability. More specifically, the parents often held child on their laps during feeding and play times although he was mobile and expressed a desire to feed himself. While this did not happen all of the time, it happened enough that Ms. Mackowiak had to intervene during the visits and re-direct the parents. Ms. Mackowiak also reported that the parents displayed inappropriate behavior at the visits. Specifically, the parents struggled to mask their emotions in front of child, often making inappropriate remarks or displaying visible frustration. Both parents were consistently late to visitation at the OCYF office which often caused the child to spend a portion of the visit interacting with the visit coach only. Father took frequent trips outside of his home and the office to talk on the phone and smoke cigarettes. Additionally, the parents often encouraged the child to nap during the visits, even if the child resisted. The parents were also instructed to provide the child with nutritious snacks at the visits. When visitation was in the family home, the parents were able to prepare some healthy meal options. However, when the visits were moved to the OCYF Office, the parents rarely brought healthy snack choices. There were also some safety concerns at both the visits in the home and at the OCYF office. Ultimately, it was Ms. Mackowiak's testimony that the parents needed regular

7

prompts and were unable to make the necessary changes to their parenting styles. She reported that the child appeared happy interacting with any adult at the visits and wasn't particularly drawn to Mother or Father. Ms. Mackowiak reported that the child often sought her attention and engaged her in play while the parents were present. Staff from Pressley Ridge was also responsible for supervising visits and the Treatment Coordinator, Laura Burbaugh, reported that Mother attend 73 out of 102 and was late 35 times. She further reported that Father attended 46 out of 102 visits and he was late 29 times.

Based upon the parent's overall lack of progress, OCYF filed the Petition to Involuntarily Terminate Mother's and Father's Parental Rights on February 4th, 2019. The parties appeared for a Permanency Hearing on February 19th, 2019, and the Court ordered the child to remain in foster care. The parents were found to be in minimal compliance with the permanency plan and to have made minimal progress in alleviating the circumstances which necessitated the original placement. The Court reduced visitation to once a week. Parents were ordered to continue mental health and drug and alcohol treatment, to attend random screens, and Mother was ordered to continue domestic violence therapy. In March of 2019, coached visitation was moved out of the family home. Both Mother and Father's parental rights were terminated with respect to their other two children on March 22, 2019.

The family's final forensic evaluations with Dr. Pepe were scheduled in April and August of 2019. The birth parents failed to attend their individual evaluations and an interactional evaluation with the child on April 4th, 2019, and they rescheduled evaluations on August 22nd, 2019. The child and his foster parents did attend an interactional evaluation on April 4th, 2019. Dr. Pepe noted that the foster parents exhibited excellent parenting skills and that the

8

child displayed multiple bonding behaviors suggestive of a positive and primary attachment with them.

ANALYSIS:

Father alleges that this Court abused its discretion and/or erred as matter of law in concluding that grounds for termination existed pursuant to 23 Pa.C.S.A. §2511(a)(2)(5)(8) and (b). Mother alleges that this Court abused its discretion and/or erred as matter of law in concluding that termination of her parental rights best suited the needs and welfare of the child pursuant to 23 Pa.C.S.A. §2511(b). 23 Pa.C.S.A. §2511 provides that:

### § 2511. Grounds for involuntary termination
(a) General Rule.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.
(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months

9.

or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

(b) Other considerations.—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.

**23 Pa.C.S.A. §2511**

"Parental rights may be involuntarily terminated where any one subsection of Section 2511(a) is satisfied, along with consideration of the subsection 2511(b) provisions." In re Z.P., 994 A.2d 1108, 1117 (Pa.Super.2010). "Under Section 2511(b), the court must consider whether termination will best serve the child's needs and welfare". In re C.P., 901 A.2d 516 (Pa.Super.2006). "Intangibles such as love, comfort, security, and stability are involved when inquiring about the needs and welfare of the child." Id. At 520. "In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship." In re Z.P., supra at 1121. With respect to the needs and welfare analysis, "The court must discern the nature and status of the parent-child bond, paying close attention to the effect on the child of permanently severing the bond." In re C.P., 901 A.2d 516 (Pa.Super.2006).

"The statute permitting the termination of parental rights outlines certain irreducible minimum requirements of care that parents must provide for their children, and a parent who cannot or will not meet the requirements within a reasonable time following intervention by the state, may properly be considered unfit and may properly have ... her rights terminated." In re B.L.L., 787 A.2d 1007, 1013 (Pa.Super.2011). There is no simple or easy definition of parental duties. "Parental duty is best understood in relation to the needs of a

10

child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this court has held that the parental obligation is a positive duty which requires affirmative performance". In re B., N.M., 856 A.2d 847, 855 (Pa.Super.2004).

Father argues that OCYF has not met its burden with respect to 23 Pa.C.S.A. §2511 (a)(2)(5) and (8). Father's lack of progress with his court ordered goals, namely coached visitation, has caused his child to be without essential parental care, control or subsistence necessary for his physical or mental well-being. Father was court ordered to attend both mental health and drug and alcohol counseling throughout the history of the case. Father had been connected to Turtle Creek Valley for these services for several years. His attendance and compliance with the program have been inconsistent. He has not consistently attended mental health treatment or random drug screens. Father reported that he attended Suboxone Treatment on a regular basis but did not provide proof of attendance or copies of his suboxone prescription to the OCYF caseworker. Father did not sign a release of information for his dual diagnosis treatment at Turtle Creek Valley. He has not attended his child's medical appointments. Father has had ample time to remedy the conditions which led to the removal of his child and those conditions continue to exist.

The primary concern in this case is parenting. Mother has been slightly more compliant with this goal but has not made any meaningful progress. The family has worked with several different parenting programs since the case opened and parenting continues to be an issue. Most recently, the family worked with Holy Family Institute's Coached Visitation Program in 2018 and 2019. Holy Family reported little to no progress. The Holy Family report

11

noted that the parents were late to almost every visit at the OCYF office and were seldom prepared. This was alarming to the Court as the visits were only two hours in length and occurred on the same days each week. The parent's lack of progress and inability to recognize their parenting deficits are concerning. The Parents have not been able to follow basic instructions regarding food choices and activities during relatively short periods of visitation. Safety has been a concern during the visits in the family home as well as at the OCYF Office. Based on this lack of progress, the Court found that neither parent possessed the ability to safely and effectively parent their child. The parents have not attended any of the child's medical appointments and have not reported to the caseworker that they have contacted any of the child's medical providers for updates. Parents did participate in early intervention services but only because they occurred in the family home during visitation. While there have been periods of moderate compliance, the parents have failed to make progress with respect to their parenting deficits.

With respect to 23 Pa.C.S.A. §2511 (b), the Court finds that the child does not have a necessary or beneficial bond with his parents and that termination of their parental rights best suits his needs and welfare. Dr. Pepe was tasked with evaluating whether the child had a necessary or beneficial bond with his birth parents. However, the parents failed to appear for multiple appointments, so she was unable to address the issue in her final report. She was able to opine that given the fact the child "has been in the same home for nineteen months, since his birth, and given the fact that he obviously is attached to and very happy with his current caregivers, when considering best interest as being separate from those of his biological parents, his current placement presents as a very positive, permanent placement

12

resource for the child". The OCYF caseworker along with the Treatment Coordinator from Pressley Ridge have reported that all the child's needs are being met in the foster home and that he is very bonded with his foster parents. The Court relied on Dr. Pepe's reports and the testimony of the OCYF caseworker, the Pressley Ridge Staff and the visit coach, Emily Mackowiak, in determining that the child's primary bond was with his foster parents. Each witness reported that the child looks to the foster parents for comfort and security. For these reasons and the reasons stated above, the order of this Court should be affirmed.

BY THE COURT:

_____, J.

13